AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

_____ SOUTHERN _____   **DISTRICT OF** _____ NEW YORK _____

CELTEL (SL) LIMITED, Plaintiff

### SUMMONS IN A CIVIL CASE

### V.

KYTEL INTERNATIONAL GROUP, INC.,
Defendant

CASE NUMBER:

# 06 CV 6033

TO: (Name and address of defendant)

Kytel International Group, Inc.
15 Maiden Lane
4th Floor
New York, NY 10038

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

LINKLATERS
Paul S. Hessler
1345 Avenue of the Americas
New York, NY 10105

### JUDGE HOLWELL

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

AUG 0 8 2006

## J. MICHAEL McMAHON

CLERK

_Sayre_

(BY) DEPUTY CLERK

DATE

**OFFICE COPY**

JS 44C/SDNY
REV. 12/2004

JUDGE HOLWELL

CIVIL COVER SHEET

06 CV 6033

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Celtel (SL) Limited | Kytel International Group, Inc. |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Linklaters, 1345 Avenue of the Americas New York, NY 10105 | Unknown |

AUG 0 8 2006

U.S.D.C.

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

28 U.S.C. § 1332. Diversity action seeking recognition and enforcement of a money judgment pursuant to the New York Uniform Foreign Country Money Judgments Act, NY CPLR §§ 5301-5309.

Has this or a similar case been previously filed in SDNY at any time? No ☒  Yes? ☐  Judge Previously Assigned

If yes, was this case Vol☐ Invol. ☐ Dismissed. No☐ Yes ☐  If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*                    NATURE OF SUIT

ACTIONS UNDER STATUTES

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | [ ] 610 AGRICULTURE | [ ] 422 APPEAL 28 USC 158 | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 362 PERSONAL INJURY - | [ ] 620 FOOD & DRUG | [ ] 423 WITHDRAWAL | [ ] 410 ANTITRUST |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT | MED MALPRACTICE | [ ] 625 DRUG RELATED | 28 USC 157 | [ ] 430 BANKS & BANKING |
| [ ] 130 MILLER ACT | LIABILITY | [ ] 365 PERSONAL INJURY | SEIZURE OF | | [ ] 450 COMMERCE/ICC |
| [ ] 140 NEGOTIABLE | [ ] 320 ASSAULT, LIBEL & | PRODUCT LIABILITY | PROPERTY | | RATES/ETC |
| INSTRUMENT | SLANDER | [ ] 368 ASBESTOS PERSONAL | 21 USC 881 | PROPERTY RIGHTS | [ ] 460 DEPORTATION |
| [x] 150 RECOVERY OF | [ ] 330 FEDERAL | INJURY PRODUCT | [ ] 630 LIQUOR LAWS | | [ ] 470 RACKETEER INFLU- |
| OVERPAYMENT & | EMPLOYERS' | LIABILITY | [ ] 640 RR & TRUCK | [ ] 820 COPYRIGHTS | ENCED & CORRUPT |
| ENFORCEMENT OF | LIABILITY | | [ ] 650 AIRLINE REGS | [ ] 830 PATENT | ORGANIZATION ACT |
| JUDGMENT | [ ] 340 MARINE | PERSONAL PROPERTY | [ ] 660 OCCUPATIONAL | [ ] 840 TRADEMARK | (RICO) |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT | | SAFETY/HEALTH | | [ ] 480 CONSUMER CREDIT |
| [ ] 152 RECOVERY OF | LIABILITY | [ ] 370 OTHER FRAUD | [ ] 690 OTHER | | [ ] 490 CABLE/SATELLITE TV |
| DEFAULTED | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | | SOCIAL SECURITY | [ ] 810 SELECTIVE SERVICE |
| STUDENT LOANS | [ ] 355 MOTOR VEHICLE | [ ] 380 OTHER PERSONAL | LABOR | | [ ] 850 SECURITIES/ |
| (EXCL VETERANS) | PRODUCT LIABILITY | PROPERTY DAMAGE | | [ ] 861 MIA (1395FF) | COMMODITIES/ |
| [ ] 153 RECOVERY OF | [ ] 360 OTHER PERSONAL | [ ] 385 PROPERTY DAMAGE | [ ] 710 FAIR LABOR | [ ] 862 BLACK LUNG (923) | EXCHANGE |
| OVERPAYMENT OF | INJURY | PRODUCT LIABILITY | STANDARDS ACT | [ ] 863 DIWC (405(g)) | [ ] 875 CUSTOMER |
| VETERANS BENEFITS | | | [ ] 720 LABOR/MGMT | [ ] 863 DIWW (405(g)) | CHALLENGE |
| [ ] 160 STOCKHOLDERS SUITS | | | RELATIONS | [ ] 864 SSID TITLE XVI | 12 USC 3410 |
| [ ] 190 OTHER CONTRACT | | | [ ] 730 LABOR/MGMT | [ ] 865 RSI (405(g)) | [ ] 891 AGRICULTURE ACTS |
| [ ] 195 CONTRACT PRODUCT | | | REPORTING & | | [ ] 892 ECONOMIC |
| LIABILITY | | | DISCLOSURE ACT | | STABILIZATION ACT |
| [ ] 196 FRANCHISE | | | [ ] 740 RAILWAY LABOR ACT | FEDERAL TAX SUITS | [ ] 893 ENVIRONMENTAL |
| | | | [ ] 790 OTHER LABOR | | MATTERS |
| | ACTIONS UNDER STATUTES | | LITIGATION | [ ] 870 TAXES | [ ] 894 ENERGY |
| | | | [ ] 791 EMPL RET INC | [ ] 871 IRS-THIRD PARTY | ALLOCATION ACT |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | SECURITY ACT | 20 USC 7609 | [ ] 895 FREEDOM OF |
| | | | | | INFORMATION ACT |
| [ ] 210 LAND CONDEMNATION | [ ] 441 VOTING | [ ] 510 MOTIONS TO | | | [ ] 900 APPEAL OF FEE |
| [ ] 220 FORECLOSURE | [ ] 442 EMPLOYMENT | VACATE SENTENCE | | | DETERMINATION |
| [ ] 230 RENT LEASE & | [ ] 443 HOUSING | 20 USC 2255 | | | UNDER EQUAL ACCESS |
| EJECTMENT | ACCOMMODATIONS | [ ] 530 HABEAS CORPUS | | | TO JUSTICE |
| [ ] 240 TORTS TO LAND | [ ] 444 WELFARE | [ ] 535 DEATH PENALTY | | | [ ] 950 CONSTITUTIONALITY |
| [ ] 245 TORT PRODUCT | [ ] 445 AMERICANS WITH | [ ] 540 MANDAMUS & OTHER | | | OF STATE STATUTES |
| LIABILITY | DISABILITIES - | [ ] 550 CIVIL RIGHTS | | | [ ] 890 OTHER STATUTORY |
| [ ] 290 ALL OTHER | EMPLOYMENT | [ ] 555 PRISON CONDITION | | | ACTIONS |
| REAL PROPERTY | [ ] 446 AMERICANS WITH | | | | |
| | DISABILITIES -OTHER | | | | |
| | [ ] 440 OTHER CIVIL RIGHTS | | | | |

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

DEMAND $_____  OTHER _____     JUDGE _____  DOCKET NUMBER_____

*Check YES only if demanded in complaint*
JURY DEMAND: ☐ YES ☒ NO                    NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

JUDGE HOLWELL                                          **OFFICE COPY**

LINKLATERS
Paul S. Hessler (PH 4461)          **06 CV     6033**
1345 Avenue of the Americas
New York, NY 10105
(212) 903-9000
(212) 903-9100 (fax)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CELTEL (SL) LIMITED,

                Plaintiff,

        v.                              **COMPLAINT**

KYTEL INTERNATIONAL GROUP, INC.,             06 CV _____ (____)

                Defendant.

Plaintiff, Celtel (SL) Limited ("Celtel," or "Plaintiff"), by its attorneys,

Linklaters, as and for its Complaint against defendant Kytel International Group, Inc. ("Kytel"),

alleges as follows:

### NATURE OF THE ACTION

1.     Plaintiff brings this action pursuant to the New York Uniform Foreign Country

Money Judgments Recognition Act, New York Civil Practice Law and Rules §§ 5301-5309, for

recognition and enforcement of a final, conclusive, and enforceable money judgment (the "Sierra

Leone Judgment") rendered by the High Court of Sierra Leone (the "Sierra Leone Court")

against defendant Kytel. A true and correct copy of the Sierra Leone Judgment is annexed

hereto as Exhibit A.

2.     The Sierra Leone Judgment arose from Kytel's failure to pay amounts owed to

Plaintiff under an agreement dated September 15, 2003 (the "Interconnect Agreement") between

Kytel and Plaintiff. A true and correct copy of the Interconnect Agreement is annexed hereto as Exhibit B.

## THE PARTIES

3.     Plaintiff Celtel is a limited liability company incorporated under the laws of Sierra Leone with its principal place of business at 42 Main Motor Road, Wilberforce, Freetown, Sierra Leone. Celtel carries on the business of telecommunications in the Republic of Sierra Leone.

4.     On information and belief, defendant Kytel is a corporation organized and existing under the laws of the State of New York with its principal place of business at 15 Maiden Lane, 4th Floor, New York, New York 10038.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs and because this is a dispute between a citizen of a State (Kytel) and a citizen or subject of a foreign state (Celtel).

6.     . Venue in this district is appropriate pursuant to 28 U.S.C. § 1391 as the Defendant resides in the Southern District of New York at 15 Maiden Lane, 4th Floor, New York, New York 10038.

## THE 2003 INTERCONNECT AGREEMENT

7.     Pursuant to the terms of the Interconnect Agreement, Celtel provided Kytel with interconnection services limited to the termination of calls on Plaintiff's land mobile cellular network in Sierra Leone.

8.     Pursuant to Section 7 of the Interconnect Agreement, Plaintiff provided to Kytel monthly reports relating to interconnected calls made during the preceding calendar month. Also

pursuant to Section 7 of the Interconnect Agreement, Plaintiff provided to Kytel monthly invoices of charges for interconnection services owed to it by Kytel.

9.     Section 7.6 of the Interconnect Agreement required Kytel to pay all charges within 30 days of its receipt of an invoice.

10.     The parties commenced commercial activities under the Interconnect Agreement in September 2003.

11.     Kytel made several payments to Plaintiff until December 2003.  However, notwithstanding its receipt of proper invoices thereafter, and despite demand, Kytel failed to make payments for the months of January 2004, February 2004, and March 2004.

### THE SIERRA LEONE JUDGMENT

12.     On April 25, 2005, Celtel obtained an order from the High Court of Sierra Leone authorizing the issuance of a Writ of Summons for Service of Notice Out of the Jurisdiction on Kytel.

13.     On May 10, 2005, a Writ of Summons was issued and proper notice thereof was served upon Kytel by way of registered post to its address at 15 Maiden Lane, 4th Floor, New York, New York 10038, giving Kytel thirty days after receipt to enter an appearance in the action.

14.     On June 6, 2005, the Notice of Writ was delivered to, and signed for by, Kytel.

15.     Pursuant to the Notice of Writ, Kytel was permitted to enter an appearance in the Sierra Leone action by post.

16.     Defendant failed to enter an appearance with the High Court of Sierra Leone within the thirty day time period or at any time thereafter.

17.     On August 20, 2005, the Sierra Leone Court entered a Judgment in Default of Appearance in favor of Celtel and against Kytel which is attached to this complaint as Exhibit A.

Under the Sierra Leone Judgment, the Sierra Leone Court ordered Kytel to pay Celtel the sum of

$224,531.80, plus damages for breach of the Interconnect Agreement, interest to be assessed by

the Sierra Leone Court from January 1, 2004, and costs.

18.     Kytel has not made an application to have the Sierra Leone Judgment set aside.

19.     Kytel has not paid any portion of the Sierra Leone judgment to Celtel.

## CLAIM FOR RELIEF

### (For Recognition of the Sierra Leone Judgment)

20.     Pursuant to the Sierra Leone Judgment, Plaintiff is entitled to payment by Kytel in

the amount of $224,531.80 plus interest and costs.

21.     The Sierra Leone Judgment is final, conclusive, and enforceable in Sierra Leone.

22.     The Sierra Leone Judgment was rendered under a system which provides

impartial tribunals and procedures that are compatible with the requirements of due process of

law.

23.     The Sierra Leone Court had personal jurisdiction over Kytel in that Kytel entered

into a contract and carried on business in Sierra Leone and, for purposes of the Interconnect

Agreement, had a registered office in Sierra Leone.

24.     The Sierra Leone Court had subject matter jurisdiction over Kytel in that Kytel

agreed that the Interconnect Agreement would be governed and construed in accordance with the

laws of Sierra Leone.

25.     Kytel was provided with notice of the proceedings in Sierra Leone in sufficient

time to enable it to defend.

26.     The Sierra Leone Judgment was not obtained by fraud.

27.     The cause of action on which the Sierra Leone Judgment is based is not repugnant

to the public policy of the State of New York.

28.     The Sierra Leone Judgment does not conflict with any other final and conclusive judgment.

29.     The proceedings in the Sierra Leone court were not contrary to any agreement between the parties under which the dispute in question was to be settled otherwise.

30.     Celtel is entitled to recognition of the Sierra Leone Judgment against Kytel in the amount of $224,531.80 assessed by the Sierra Leone Court, in addition to interest and costs to be assessed by the Sierra Leone Court, and costs in the present action.

WHEREFORE, Plaintiff Celtel (SL) Limited demands judgment against Defendant Kytel as follows:

1.      Recognizing and enforcing the Sierra Leone Judgment in awarding Plaintiff $224,531.80 assessed by the Sierra Leone Court, in addition to interest and costs to be assessed by the Sierra Leone Court, and costs in the present action; and

2.      Awarding such other and further relief as is deemed appropriate by the Court.

Dated:     New York, New York
           August 8, 2006

                                        Respectfully submitted,

                                        LINKLATERS

                                        By: _____
                                            Paul S. Hessler (PH 4461)

                                        1345 Avenue of the Americas
                                        New York, NY 10105
                                        (212) 903-9000
                                        (212) 903-9100 (fax)

                                        *Attorneys for Plaintiff Celtel (SL) Limited*

EXHIBIT A

C.C. 502/2005          2005          C.          NO.45

## IN THE HIGH COURT OF SIERRA LEONE

BETWEEN:

CELTEL (S.L.) LIMITED                    PLAINTIFF

AND

KYTEL INTERNATIONAL GROUP INC.                    DEFENDANT

DATED THIS _____ DAY OF AUGUST, 2005

NO APPEARANCE having been entered by the Defendant to the Writ of Summons herein;

IT IS THIS DAY ADJUDGED as follows

1.    That the Defendant do pay the Plaintiff the sum of US$224,531.80 (Two Hundred and Twenty Four Thousand Five Hundred and Thirty One United States Dollars and Eight Cents) being an amount arising out of the agreement between the Plaintiff and the Defendant for, inter alia, the interconnection by the Defendant to the Plaintiff's networks and the provision by the Plaintiff of interconnection services and ancillary services.

2.    That the Defendant do pay the Plaintiff damages for breach of the said agreement by virtue of the Defendant's failure to pay the sums due under the agreement at the time payment of same was due to be assessed by this Honourable Court.

3.    That the Defendant do pay the Plaintiff interest on the said sum of US$224,531.80 (Two Hundred and Twenty Four Thousand Five Hundred and Thirty One United States Dollars and Eight Cents) from the 1st of January, 2004 to be assessed by this Honourable Court pursuant to the Law Reform (Miscellaneous Provisions) Act, Chapter 19 of the Laws of Sierra Leone, section 4.

4.    Costs.

CERTIFIED TRUE COPY                    BY THE COURT

MASTER AND REGISTRAR

C.C. 502/2005          2005          C.          NO.45

## IN THE HIGH COURT OF SIERRA LEONE

BETWEEN:

CELTEL (S.L) LIMITED                    PLAINTIFF

AND

KYTEL INTERNATIONAL GROUP INC.          DEFENDANT

JUDGEMENT IN DEFAULT OF APPEARANCE

BASMA & MACAULAY
19 SIAKA STEVENS STREET
FREETOWN
SOLICITORS FOR THE
PLAINTIFF HEREIN.

MISC. APP. 90/2005          2005          C.          NO.8

### IN THE HIGH COURT OF SIERRA LEONE

### IN THE MATTER OF AN INTENDED ACTION

### IN THE MATTER OF AN APPLICATION UNDER ORDER II RULE 7 OF THE HIGH COURT RULES

### IN THE MATTER OF AN APPLICATION UNDER ORDER VIII OF THE HIGH COURT RULES

BETWEEN:

CELTEL (S.L.) LIMITED     -     INTENDED PLAINTIFF/APPLICANT

AND

KYTEL INTERNATIONAL GROUP INC.   - INTENDED/DEFENDANT


### BEFORE THE HONOURABLE MR JUSTICE SIR JOHN MURUA DATED THE 25TH DAY OF APRIL, 2005

UPON READING the Ex-parte Notice of Motion dated 7th of April, 2005 and the Affidavit in support of Berthan Macaulay (Jnr) sworn to on the 7th day of April, 2005 and filed herein together with the exhibits attached thereto;

UPON HEARING BERTHAN MACAULAY (Jnr) of Counsel for the Intended Plaintiff/Applicant;

IT IS HEREBY ORDERED as follows:

1. That the Intended Plaintiff/Applicant is granted leave to issue a Writ of Summons of which notice is to be given out of the jurisdiction of this Honourable Court.

2. That Notice of the Writ of Summons be served upon the Intended Defendant outside the jurisdiction of this Honourable Court.

3. That Notice of the Writ of Summons be served upon the Intended Defendant by registered post addressed to the Intended Defendant at 15 Maiden Lane, 4th Floor, New York, New York 10038, United States.

4. That the Intended Defendant do enter Appearance within thirty (30) days upon service upon it of the Notice of the Writ of Summons.

5. That the costs of this application be costs in the cause.

CERTIFIED TRUE COPY                    BY THE COURT

**SIERRA LEONE**    **No. C.C.502/2005**    **2005**    **C.**    **NO.45**
**(TO WIT)**

### IN THE HIGH COURT OF SIERRA LEONE

**BETWEEN:**

CELTEL (S.L.) LIMITED    -    PLAINTIFF

AND

**(L.S.)**    KYTEL INTERNATIONAL GROUP INC. -    DEFENDANT

> "His Excellency Alhaji Dr. Ahmad Tejan Kabbah, President of the Republic of Sierra Leone, Supreme Head of State, Grand Commander of the Order of the Republic, Commander-in-Chief of the Armed Forces, Fountain Head of Unity, Freedom, Honour and Justice."

### NOTICE OF WRIT FOR SERVICE OUT OF THE JURISDICTION

**To:**

KYTEL INTERNATIONAL GROUP INC.
15 MAIDEN LANE, 4ᵀᴴ FLOOR, NEW YORK,
N.Y. 10038, UNITED STATES.

**TAKE NOTICE** that CELTEL (S.L.) LIMITED of Bicentenary House, 17 Wallace Johnson Street, Freetown, Sierra Leone has commenced an action against you KYTEL INTERNATIONAL GROUP INC in the High Court of Sierra Leone, by writ of that court, dated the 10th day of May 2005, which writ is endorsed as follows: -

### STATEMENT OF CLAIM

The Plaintiffs claim against the Defendant is for the following:

(1)    The sum of US$224,531.80 due and owing by the Defendant to the Plaintiff, as of the 4ᵗʰ of June, 2004, arising out of the agreement between the Plaintiff and the Defendant for, inter alia, the interconnection by the Defendant to the Plaintiffs' networks and the provision by the Plaintiff of interconnection services and ancillary services.

(2)    Damages for breach of the said agreement by virtue of the Defendant's failure to pay the sums due under the said agreement at the time and place payment of same were due.

(3)    Interest on the said sum of US$224,531.80 as of the 1ˢᵗ of January, 2004 until judgement at the rate of 10% per annum pursuant to the Law Reform (Miscellaneous Provisions) Act, Chapter 19 of the Laws of Sierra Leone, section 4.

(4)    Any other order that this Honourable Court may deem just.

(5)    Costs.

- 2 -

## PARTICULARS

1.     At all material times the Plaintiff is a limited liability company incorporated under the laws of Sierra Leone and carrying on the business of, inter alia, telecommunications generally, cellular telephone and paging in particular, within and without the Republic of Sierra Leone. The Plaintiff was at all material times and is authorised under licence to install and operate a public land mobile cellular telecommunications system and to provide cellular services.

2.     At all material times the Defendant is a corporate body and is authorised to terminate international traffic into Sierra Leone.

3.     By an agreement in writing made between the Plaintiff and the Defendant dated the 15th of September, 2003 (hereinafter referred to as the "Agreement") the Defendant (referred to in the Agreement as 'KYTEL') agreed to interconnect to the Plaintiff's network and the Plaintiff agreed to provide interconnection services and ancillary services upon the terms and conditions therein provided. Clause 1 of the Agreement provided as follows:

> "1. Scope of Interconnection
>
> 1.1.     The interconnection services provided under this Agreement shall be exclusively the termination of calls on CELTEL'S land mobile cellular network;
>
> 1.2.     The charges for the interconnection services provided under this Agreement,
>
> > (a) shall in all cases be non-discriminatory; and
> >
> > (b) shall be designed to ensure that CELTEL can recover its Long Run Incremental Cost of provision of the services."

4. Clause 1.1. of the Agreement provided, inter alia, that the Agreement would come into effect as from the 15th of September, 2003. The Plaintiff commenced providing the interconnection services agreed upon as from the 24th of September, 2003.

5.     Clauses 7.3 & 7.6 of the Agreement provided as follows:-

> "7.3. Not later than 15 days after receiving the information referred to in clause 7.2, CELTEL shall supply to KYTEL an invoice of charges for interconnection services owed to it by KYTEL.  CELTEL shall base its invoice on the information it has supplied to KYTEL
>
> 7.6.     All charges payable by KYTEL under this Agreement shall be paid within 30 days of receipt by it of an invoice in the relevant amount in accordance with the written instructions of CELTEL"

6. The Plaintiff provided the Defendant with written instructions that payments due it were to be paid by the Defendant to the Plaintiff's bank account with Rokel Commercial Bank (Sierra Leone) Limited at Siaka Stevens Street, Freetown, Sierra Leone. The Plaintiffs have supplied to the Defendant invoices

- 3 -

of all charges for interconnection owed to it by the Defendant. As of the 4th of June 2004 the Defendant is indebted to the Plaintiff in the sum of US$224,531.80. The Defendant failed to pay the said sum notwithstanding that it has been in receipt of the invoices covering the said amount for a period in excess of thirty (30) days.

7.     By a letter dated the 4th of June 2004 the Plaintiff's Finance Director wrote to the Defendant requesting payment of the said sum of US$224,531.80. By letters dated the 3rd of August and the 20th of September 2004 the Plaintiff's solicitors wrote to the Defendant demanding payment of the said sum of US$224,531.80. Despite these requests the Defendant is still indebted to the Plaintiff in the said sum of US$224,531.80.

AND THE PLAINTIFF CLAIMS:

(1)     The sum of US$224,531.80 due and owing by the Defendant to the Plaintiff, as of the 4th of June, 2004, arising out of the agreement between the Plaintiff and the Defendant for, inter alia, the interconnection by the Defendant to the Plaintiffs' networks and the provision by the Plaintiff of interconnection services and ancillary services.

(2)     Damages for breach of the said agreement by virtue of the Defendant's failure to pay the sums due under the said agreement at the time payment of same were due.

(3)     Interest on the said sum of US$224,531.80 as of the 1st of January, 2004 until judgement at the rate of 10% per annum pursuant to the Law Reform (Miscellaneous Provisions) Act, Chapter 19 of the Laws of Sierra Leone, section 4.

(4)     Any other order that this Honourable Court may deem just.

(5)     Costs.

                                        (Sgd) *Berthan Macaulay (Jnr)*
                                        COUNSEL.

AND you are required within 30 days after receipt of this notice, inclusive of the day of such receipt, to defend the said action, by causing an appearance to be entered for you in the High Court of Sierra Leone to the said action; and in default of your so doing, the said CELTEL (S.L.) LIMITED may proceed therein, and judgment may be given in your absence.

You may appear hereto by entering an appearance either personally or by a Solicitor at the Master's Office, Siaka Stevens Street, Freetown.

A Defendant appearing personally may, if he desire, enter his appearance by post and appropriate forms may be obtained by sending a Postal Order for 25 cents with an addressed envelope, foolscap size, to the Master and Registrar, High Court, Freetown.

                                                        ..../page 4

- 4 -

If you enter an appearance you must also deliver a defence within ten (10) days of the time limited for appearance, unless such time is extended by the Court or a Judge, otherwise judgment may be entered against you without notice, unless you have been in the meantime been served with a summons for judgment.

BASMA & MACAULAY
SOLICITORS FOR THE PLAINTIFF

DATED THE ___ DAY OF MAY 2005

THIS NOTICE WAS SERVED BY ME,

OF

AT ___ ON THE DEFENDANT, ON THE ___ DAY

OF ___ 2005.

INDORSED THE ___ DAY OF ___ 2005

(SIGNED)

ADDRESS:

N.B.- THIS NOTICE IS TO BE USED WHERE THE PERSON TO BE SERVED IS NOT A SIERRA LEONEAN CITIZEN.

THIS NOTICE WAS FILED ON THE _20th_ DAY OF _May_ 2005 BY BASMA & MACAULAY, OF AND WHOSE ADDRESS FOR SERVICE IS, 19 SIAKA STEVENS STREET (2ND FLOOR) FREETOWN, SIERRA LEONE, SOLICITORS FOR AND ON BEHALF OF THE PLAINTIFF HEREIN.

CERTIFIED TRUE COPY

MASTER & REGISTRAR

EXHIBIT B

**THIS AGREEMENT** is made the _15 TH_ day of _SEPTEMBER_ 2003 between

Celtel (S.L.) Limited ("CELTEL"), a company incorporated in Sierra Leone, having its offices at 42, Main Motor Road Wilberforce, Freetown, Sierra Leone on the one part.

and

KYTEL having its registered office at 10 Howe Street, Freetown Sierra Leone, on the other part.

**WHEREAS**

A. CELTEL is authorised under licence to install and operate a public land mobile cellular telecommunication system and to provide cellular services;

B. KYTEL is authorised under licence to terminate international traffic into Sierra Leone;

C. KYTEL intend to interconnect to CELTEL networks and CELTEL intends to provide interconnection services and ancillary services in accordance with the terms and conditions of this Agreement.

**IT IS AGREED** as follows:

**1.    Scope of interconnection**

1.1    The interconnection services provided under this Agreement shall be exclusively the termination of calls on CELTEL's land mobile cellular network;

1.2    The charges for the interconnection services provided under this Agreement:

  (a)    shall in all cases be non-discriminatory; and

  (b)    shall be designed to ensure that CELTEL can recover its Long Run Incremental Cost of provision of the services.

**2.    Technical standards**

2.1    Each Party shall comply with the technical specifications and standards set out in Annex 1 in so far as they apply to the provision of services under this Agreement.

2.2    In the practical implementation of the technical specifications and standard under this Agreement, the Parties shall apply standards and operating

1



guidelines which in the first instance have due regard to the following in the order of precedence specified below:

1. any legal requirements imposed upon each of them under any licence; and

2. any recommendations by ITU-T; and

3. the GSM Memorandum of Understanding.

## 3.    Point of interconnection

3.1    The only Point of Interconnection shall be the DDF trunk side termination of the CELTEL Switch located in Freetown.

3.2    The Parties shall make available interface equipment with a Capacity of at least 2 Mbit/s at the Point of Interconnection.

## 4.    Planning and provision of Capacity

4.1    KYTEL shall supply to CELTEL annual forecasts of the Capacity required at the Point of Interconnection.

4.2    CELTEL shall ensure that sufficient Capacity is made available to meet the annual forecast of the Capacity required by KYTEL.

4.3    Should CELTEL be unable to provide capacity as requested by KYTEL, it will notify in writing the reasons for such inability to provide the capacity requested.

## 5.    Provision of Information

5.1    The Parties shall exchange technical and other data necessary for the effective implementation and management of interconnection under this Agreement.

5.2    The Parties shall measure traffic passing across the Point of Interconnection so as to provide the following information to each other in relation to each interconnected call:

(a)    the type of call;

(b)    its origin and destination; and

(c)    its date, time and duration.



2

## 6.    Charges for interconnection services

6.1    KYTEL shall pay to CELTEL a charge for interconnection services of USD 0.13 per minute, for any calls terminated on the CELTEL network.

## 7.    Billing

7.1    Each Party shall be responsible for billing its own customers for the services it provides to them.

7.2    Not later than 15 days after the end of each calendar month, CELTEL shall send to KYTEL the information specified in clause 5.2 above relating to interconnected calls made during that month.

7.3    Not later than 15 days after receiving the information referred to in clause 7.2, CELTEL shall supply to KYTEL an invoice of charges for interconnection services owed to it by KYTEL. CELTEL shall base its invoice on the information it has supplied to KYTEL.

7.4    Interconnection Fees payable by KYTEL in accordance with the provisions of this clause 6 shall in respect of all calls be calculated on a per second basis.

7.5    Invoices are due and payable in US Dollars.

7.6    All charges payable by KYTEL under this Agreement shall be paid within 30 days of receipt by it of an invoice in the relevant amount in accordance with the written payment instructions of CELTEL.

7.7    If KYTEL fails to pay any amount due by it under this Agreement within the period referred to in clause 7.6, CELTEL may immediately terminate the services without notice and without compensation for KYTEL.

## 8.    Dispute resolution

8.1    If a Party wishes to invoke the dispute procedure specified in this paragraph, it shall send a written notice to the other Party. The notice shall contain all relevant details including the nature and extent of the dispute. The receiving Party shall acknowledge in writing the receipt of such notice of the Dispute within two Working Days.

8.2    Following notice under paragraph 8.1, the Parties shall consult in good faith to try to resolve the dispute.

8.3    If agreement is not reached within 14 days, either Party may send written notice to the other Party requiring the dispute to be escalated and stating to whom that Party has escalated the dispute.  The dispute may be escalated as appropriate:

3

8.4     Following notice under clause 8.3, the Parties shall work in good faith to try to resolve the dispute, involving appropriate senior managers, as quickly as possible.

8.5     If the dispute is referred by either Party for arbitration, the Parties shall agree on the person or body who is to act as arbitrator. Failing such agreement within 14 days of notice of the dispute, the arbitrator shall be appointed by the Appointing Authority, which shall be the London Court of International Arbitration. Any arbitration under this Agreement shall :

    (a)     be held under the rules applicable to arbitration in terms of the laws of Sierra Leone;

    (b)     take place in Freetown, Sierra Leone;

    (c)     be conducted with only the legal and other representatives of the Parties present; and

    (d)     be undertaken at the expense of the Party that required the dispute to be escalated.

    (e)     be final and binding on the Parties.

8.6     The above dispute resolution procedures are exclusive of any remedies that may be available in respect of any breach of any provisions of this Agreement.

8.7     Notwithstanding the provisions of paragraph 8.6 above, neither Party shall be precluded from obtaining interim relief from a court of competent jurisdiction pending the decision of the arbitrators appointed in accordance with paragraph 8.5.

8.8     The Parties agree to keep the arbitration including the subject matter of the arbitration and the evidence heard during the arbitration confidential.

## 9.     Quality of service

9.1     Each Party is responsible for the safe operation of its network and shall take all reasonable and necessary steps in its operation and implementation of this Agreement to ensure that its network does not:

    (a)     endanger the safety or health of employees, contractors, agents or customers of the other Party; or

    (b)     damage, interfere with or cause any deterioration in the operation of the other Party's network.

9.2     Each Party shall use its best endeavours to ensure that the quality of calls that originated abroad or on its network and passed to the other Party is maintained to at least the quality of such calls terminated on its network.

4

9.3     Each Party shall use its best endeavours to ensure that the quality of
        interconnected calls passed to it by the other Party is maintained to at least the
        quality of calls originated and terminated on its own network.

## 10.    Review

10.1    A Party may seek to amend this Agreement by serving on the other a review
        notice if:

    (a)    either Party's Licence is materially modified (whether by amendment
        or replacement); or

    (b)    a material change occurs in the law or regulations (including
        enforcement action by any regulatory authority) which affects or
        reasonably could be expected to affect the commercial or technical
        basis of this Agreement; or

    (c)    either Party is able to demonstrate a material change in the assessed
        costs of provision of interconnection services; or

    (d)    this Agreement is assigned or transferred by the other Party; or

    (e)    this Agreement makes express provision for a review or the Parties
        agree in writing that there should be a review; or

    (f)    this Agreement or any part thereof has ceased to be reasonable.

10.2    A review notice shall set out in reasonable detail the issues to be discussed
        between the Parties.

10.3    On service of a review notice, the Parties shall negotiate in good faith the
        matters to be resolved with a view to agreeing the relevant amendments to this
        Agreement.

## 11.    Term of Agreement

11.1    This Agreement comes into effect on the date hereof and shall be valid up to:

    (a)    the conclusion of a review  on the basis of the terms and conditions
        agreed from time to time by the Parties; or

    (b)    its termination under clause 12 below.

## 12.    Termination

12.1    This Agreement may be terminated for cause: 

5



(a)     if either Party fails to remedy a breach of any term or condition of this Agreement within 30 days of receiving written notice from the other to do so (except for a default of payment, in which case the termination will be immediate without notice, as the invoice is considered as due notice).

(b)     if either Party ceases to hold the licence referred to in the recitals to this Agreement;

(c)     if either Party is declared bankrupt or is insolvent.

## 13.    Confidentiality

13.1    Each Party agrees that all data, of any nature, provided to the other Party shall be treated as confidential and shall not be disclosed to any third party, unless:

(a)     the originating Party has identified the data as being non-confidential; or

(b)     the originating Party has authorised its disclosure, in which case it shall be used solely for the purpose for which disclosure was authorised; or

(c)     the data is disclosed to satisfy a legal demand by a competent court or government body.

13.2    Nothing in this Agreement shall oblige either Party to do anything which would cause it to be in breach of any statutory or regulatory obligation of confidentiality, any term or condition of a Licence issued to it by the Government of Sierra Leone or any code of practice on the confidentiality of customer information.

## 14.    Limitation of liability

14.1    Neither Party has an obligation of any kind to the other Party beyond the obligations to exercise the reasonable skill and care of a competent telecommunications operator in performing its obligations under this Agreement.

14.2    Neither Party shall be liable to the other in contract, tort (including negligence or breach of statutory duty) or otherwise for loss (whether direct or indirect) of profits, business or anticipated savings, wasted expenditure or for any indirect or other consequential loss arising in connection with the operation of this Agreement, howsoever caused.

## 15.    Force majeure

15.1    Neither Party shall be liable for any breach of this Agreement caused by act of God, insurrection or civil disorder, war or military operations, national or local emergency, acts or omissions of government, highway authority or other competent authority, compliance with any statutory obligation, industrial disputes of any kind (whether or not involving a Party's employees), fire, lightning, explosion, flood, subsidence, weather of exceptional severity, acts or omissions of persons for whom neither Party is responsible or any other cause whether similar or dissimilar outside its reasonable control and any such event is a force majeure event.

15.2    The Party initially affected by a force majeure event shall notify the other of the event promptly and in any event within 14 days of its occurrence.  The notice shall specify the estimated extent and duration of the Party's inability to perform its obligations under this Agreement.

15.3    The Party initially affected by a force majeure event shall notify the other as soon as a force majeure event ceases or ceases to have any effect on the Party's ability to perform its obligations under this Agreement.

15.4    If either Party is prevented by a force majeure event from performing an obligation under this Agreement for more than 30 days, the Parties shall consult with each other to determine the future performance of such obligation in terms of this Agreement.

## 16.    Applicable law

This Agreement and its performance shall be governed and construed in accordance with the laws of Sierra Leone, and in the absence of such laws, by the Laws of England and Wales.

## 17.    Assignment

No rights, benefits or obligations under this Agreement may be assigned or transferred, in whole or in part, by a Party without the prior written consent of the other Party, which consent shall not be unreasonably withheld.

7

## 18.   Waiver

18.1   No waiver shall be valid unless it is in writing and duly signed on behalf of the Party making the waiver. Failure to enforce any term or condition of this Agreement shall not be construed as a waiver.

18.2   No waiver by any Party of the terms and conditions of this Agreement to be performed by the other Party shall be construed as a waiver of any succeeding breach of any term or condition of this Agreement.

## 19.   Notices

19.1   A notice shall be duly served:

    (a)   if delivered by hand, at the time of actual delivery recorded in writing; or

    (b)   if sent by facsimile, upon its receipt being confirmed.

19.2   All notices and other communications relating to this Agreement shall be in writing and shall be sent as follows:

    (a)   If to CELTEL:

        Managing Director
        CELTEL

    (b)   If to KYTEL:

        Managing Director

    or to such other addresses as the Parties may notify from time to time pursuant to this clause 19.

## 20.   Entire Agreement

20.1   This Agreement contains the entire agreement between the Parties and supersedes all previous understandings, commitments, agreements or representations whatsoever, whether oral or written, in relation to the subject matter of this Agreement.

8

20.2   Except as expressly provided in this Agreement, no variation of this Agreement shall be effective unless agreed in writing by the Parties and signed by a person nominated in writing on behalf of:

(a)   KYTEL, by the Managing Director (or his successor); and

(b)   CELTEL, by a director or the company secretary (or equivalent office holder) of CELTEL.

**For and on behalf of**

**Celtel (S.L.) Limited**

................................

**KYTEL**

................................

Dated:   15/9/03

LINKLATERS JUDGE HOLWELL
Paul S. Hessler (PH 4461)
1345 Avenue of the Americas
New York, NY 10105
(212) 903-9000
(212) 903-9100 (fax)

**OFFICE COPY**

# 06 CV 6033

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



CELTEL (SL) LIMITED,

        Plaintiffs,

     v.

KYTEL INTERNATIONAL GROUP, INC.,

        Defendant.

Case no. 06 Civ

**Rule 7.1 Statement**

    Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the undersigned

counsel for Celtel (SL) Limited ("Celtel SL") (a non-governmental corporate party) certifies that

no publicly held corporation owns ten percent or more of Celtel SL's stock.  Celtel SL is wholly

owned by Celtel International B.V., a privately held corporation, of which MTC International is

the controlling shareholder, which is in turn wholly owned by MTC Kuwait, a publicly traded

company on the Kuwaiti stock exchange.

Dated:  New York, New York
     August 8, 2006

         Respectfully submitted,

         LINKLATERS

         By: _____
          Paul S. Hessler (PH 4461)

         1345 Avenue of the Americas
         New York, NY 10105
         (212) 903-9000
         (212) 903-9100 (fax)
         *Attorneys for Plaintiff Celtel (SL) Limited*